## CONLON v. IRVINE.

1. TRUSTS—CONVEYANCES—PASSIVE TRUST.

Where the agent of the beneficiary in a trust deed notified the trustee that he had an interest in the premises, complainants were not entitled to a conveyance by paying the mortgage, securing a quitclaim deed from the beneficiary, and tendering the balance of the agreed purchase price, under the rule that the trustee of a passive trust may, on the discharge of any obligation owing by the *cestui que trust*, be compelled to convey the title, where the agent's claim was unsatisfied and his consent to the transfer withheld.

2. SPECIFIC PERFORMANCE—PAROL AGREEMENT TO CONVEY—EQUITY.

Where the legal and equitable rights of the real parties in interest would be disregarded, the court of equity will not enforce the specific performance of a parol agreement of the trustee to convey on the tender of the agreed purchase price.

Appeal from Wayne; Gilday, J., presiding. Submitted October 24, 1916. (Docket No. 33.) Decided Dcember 21, 1916.

Bill by Thomas A. Conlon and another against William H. Irvine and the Union Trust Company for an injunction restraining defendants from incumbering or disposing of certain real estate, and for other relief. From a decree for defendants, complainants appeal. Affirmed.

*Neal M. Hebinger,* for complainants.

*Frank D. Andrus,* for defendant Irvine.

*Campbell, Bulkley & Ledyard* (*Douglas Campbell,* of counsel), for defendant trust company.

OSTRANDER, J. The case made by the bill of com-

plaint is rather a simple one, to the following effect: Freeman B. Dickerson and his wife, owners of certain real estate described as lot 15, block 98, of the subdivision of blocks 97 and 98, Cass Farm, known as 143 West Canfield avenue, in Detroit, Mich., conveyed the property to the Union Trust Company by a deed dated May 2, 1901, subject to a mortgage of $5,000 running to the Massachusetts Mutual Life Insurance Company, in trust, however, for Mary L. Wagner, her heirs and assigns, and containing the covenant, "which mortgage the said Mary L. Wagner assumes and agrees to pay." Plaintiffs wished to acquire the property, inquired of the Union Trust Company as to its interest in it, agreed with an officer or officers of said trust company that $7,500 was a fair price for the property, received a parol promise that the said Union Trust Company would convey the property for $7,500, procured a quitclaim deed from Mary L. Wagner, the *cestui que trust*, paid and took an assignment of the mortgage, which had been reduced to about $3,000, tendered the Union Trust Company the sum of $4,500, and demanded a deed, which was refused. In the course of negotiations with the Union Trust Company, plaintiffs were informed that William H. Irvine, agent for Mary L. Wagner, should be seen because he claimed an interest in the premises. Irvine stated that the owner was indebted to him, and plaintiffs offered him $7,500 cash for the property, he, the said Irvine, to pay the above-mentioned mortgage and the claim of the Union Trust Company against the premises. Plaintiffs seek an application of the familiar principle that the trustee of a simple or passive trust may, upon the discharge of any obligation owing by the *cestui que trust*, be compelled to convey the legal title to the equitable owner. They seem to rely also upon a right to a specific performance of the alleged parol agreement to convey land, and pray, among other

things, that the Union Trust Company be decreed to specifically perform "their part of the said agreement," plaintiffs being ready and offering to perform on their part, that upon the payment to said Union Trust Company and the said Irvine, or either of them, or the register of the court for them, the said defendants, the Union Trust Company and the said Irvine, be decreed to convey to plaintiffs, by a good and sufficient deed of conveyance, the said property in fee simple, and that upon said payment plaintiffs be decreed to be the owners of the land or premises in fee simple, and the defendants decreed to be divested of all right, title, and interest in the said premises.

When the answer of the defendant Union Trust Company is read, and the testimony taken at the hearing considered, the case is found to be not at all the case made by the bill. It is true that plaintiffs have a quitclaim deed from Mary L. Wagner, procured through the friendly offices of a mutual friend of plaintiffs and the said Mary L. Wagner. It is also true that this quitclaim deed, executed in the State of California, did not contain the names of the grantees, they being unknown to her, and that the said Mary L. Wagner did not suppose or believe that, at the time of executing the deed, for which if it was used she was to receive the nominal consideration of $25, she had any real interest in the property. Beyond this, a preponderance of the evidence requires the finding, which is in agreement with the finding made by the trial court, that the Union Trust Company did not promise to convey to plaintiffs the property, did refer the plaintiffs to Mr. Irvine, who told them the property was not for sale, and did disclose to plaintiffs facts in relation to the property which, with other facts developed at the hearing, may be briefly stated as follows: Upon the death of her husband, Mary L. Wagner found herself possessed of considerable property in the city of De-

troit, and confronted with a considerable indebtedness. She owned a home on the corner of Woodward and Canfield avenues, and considerable property on Leicester court. She applied to the Union Trust Company for a loan of $17,000, which it made to her, and as security executed a mortgage upon her property on Woodward avenue and Leicester court, some of which was afterwards sold or traded to Freeman B. Dickerson, the Union Trust Company releasing it from its mortgage. In the transaction, Dickerson conveyed directly to the Union Trust Company the property in question here, and paid certain money which the Union Trust Company received, and the said Mary L. Wagner and the said Union Trust Company made a written agreement, dated the 3d of May, 1901, which recites that the trust company holds a mortgage of the said Mary L. Wagner for $17,000, dated January 30, 1896, payment of which had been extended by agreement, recites that the Union Trust Company has released from the operation of the mortgage a portion of the real estate described therein, and, in consideration therefor, taken $8,000 in cash and a deed of certain other property made by said Dickerson and his wife to the Union Trust Company as trustee for the party of the first part, that upon the property so deeded there is a mortgage for $5,000 which Mary L. Wagner has assumed, and that until the full payment of the $17,000 mortgage the trust company shall retain possession of the property deeded to it as trustee, and, unless sooner sold, collect all the rents therefrom and use it to protect the said property, "said property to be sold as soon as practicable, and the proceeds applied, after payment of the said $5,000 mortgage, on said $17,000 mortgage." This agreement is signed by Mary L. Wagner, by W. H. Irvine, attorney in fact, and the Union Trust Company. Mr. Irvine seems to have interested himself in Mrs. Wagner's affairs for

the purpose of saving for her something out of her property. He was appointed by her her attorney in fact by a writing dated January 4, 1900, with power to sell and convey all her right, title, and interest in and to certain described property, "and all other lands and real estate belonging to and owned by her and situated in Wayne county," to collect rents, and, in the name of his principal, to execute proper deeds of the property, the power of attorney being recorded April 12, 1901. For some reason, immaterial here, Mrs. Wagner executed a deed of all her Leicester court lots remaining unsold to Irvine, the trust company discharged its mortgage, and accepted in its place a new mortgage, made by Irvine, covering the Wagner lots, and also property belonging to Irvine, this mortgage being for something more than $20,000. The Union Trust Company advanced money with which to build houses upon some of the lots, and when the trade was made with Mr. Dickerson, a written agreement was made by Mary L. Wagner, by Mr. Irvine, her attorney, by Mr. Irvine personally, and the Union Trust Company, dated July 9, 1907, which recited the agreement of the parties of the 3d of May, 1901, the fact that the Union Trust Company had upon the day of the date of the agreement taken from the said Irvine a new mortgage in place of the $17,000 mortgage mentioned in the former agreement, and the agreement that the property conveyed to the Union Trust Company by Dickerson and his wife should be held by the Union Trust Company as additional security for the payment of the mortgage given by Irvine to the Union Trust Company, the other terms and conditions of the agreement remaining unchanged. Some question is made by plaintiffs as to the legal effect of the signature of the said Mary L. Wagner to this last agreement by her attorney in fact, based upon the fact that the Dickerson property was not a part of the property of the

said Mary L. Wagner at the time the power of attorney was executed.

Mr. Irvine had himself made advances for Mrs. Wagner, and had an interest in all of the property in which she herself was beneficially interested, he claiming, and his testimony is undisputed, that while the mortgage he gave to the Union Trust Company has been reduced by payments to about $2,400, his claim against Mrs. Wagner amounts to about $9,000, as security for which he claims, not only the property originally belonging to her, but the property in question as well. The only thing that can be regarded as evidence that the parties in interest—that is to say, Mrs. Wagner, the Union Trust Company, and Mr. Irvine—are not in complete accord is the fact that Mrs. Wagner executed a quitclaim deed of this property to persons unknown to her. The history of this deed, further than it has been related, is that a Mr. Walter Mathews was applied to by Mr. Conlon to procure it, who corresponded with Mrs. Wagner, that the deed was executed and after execution was sent by her to Mr. Irvine. He received it, and, as he testified, without looking it over, knowing nothing of any transaction going on between Mr. Conlon and the Union Trust Company, having himself stated to Conlon that the property was not for sale, he supposed it was some old transaction of Mr. Wagner during his lifetime which called for a quitclaim deed, and sent the deed to Mr. Mathews, who delivered it to Mr. Conlon. There is abundant testimony supporting the conclusion that he would not understandingly have delivered the deed. In any event, Mr. Mathews, who acted as the agent for plaintiffs in the transaction, in his letter to Mrs. Wagner stated:

"I might mention that my friend is a canny Irishman who doesn't want to' pay unless the deal goes through; so you are to send the papers to me, and I am only to deliver the same to him if the deal goes through and he hands me the twenty-five dollars, which

I would immediately forward to you, otherwise I would return the paper with whatever expense you go to."

Plaintiffs say they relied upon the record, which showed only the deed from Dickerson to the Union Trust Company in trust, neither of the trust agreements having been recorded, but, as I have stated, the preponderance of the evidence supports the conclusion that plaintiffs were informed that conditions forbade the trust company to convey the property except with the assent of Mr. Irvine, and later Mr. Irvine told them that the property was not for sale. It is evident that plaintiffs regarded the conduct of the trust company with suspicion, and, in view of the record of the title, as denying to them an opportunity to procure property which, for personal reasons, they wished to own for a home. There was, probably, some misunderstanding concerning the position of the trust company and the interest of Mr. Irvine. But there are to be considered the legal and equitable rights of the real parties in interest, whose mutual relations appear to be agreeable, none of them desiring to do anything not approved by the others. Plaintiffs are in a court of equity, seeking equity, and, in view of the determined facts, there is no equitable principle which requires the court to decree, none that would excuse it in decreeing, the relief prayed for in the bill.

The decree below is therefore affirmed, with costs to the defendants.

STONE, C. J., and KUHN, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.